490 P.2d 240

Donald G. REINHART, Plaintiff-Appellant,

v.

RAUSCHER PIERCE SECURITIES COR-
PORATION and Mel Schramek,
Defendants-Appellees.

APOLLO ENTERPRISES, INC., a New
Mexico corporation, Plaintiff-
Appellant,

v.

RAUSCHER PIERCE SECURITIES COR-
PORATION and Mel Schramek,
Defendants-Appellees.

No. 671.

Court of Appeals of New Mexico.

Oct. 8, 1971.

Stanley C. Sager, Menig, Sager & Curran, Albuquerque, for plaintiffs-appellants.

Robert M. St. John, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, for Rauscher Pierce Securities Corp.

James I. Bartholomew, Albuquerque, for Mel Schramek.

## OPINION

SUTIN, Judge.

Defendants were granted summary judgment. Plaintiffs appeal.

We reverse.

Plaintiffs sued defendants for damages for breach of an oral contract relating to a "stopped stock" loss on three unlisted stocks, or, in the alternative, damages for defendants' negligence in failing to sell the stock or advise plaintiffs when the shares dropped below the agreed amount.

Defendants filed a motion to dismiss, or, in the alternative, for summary judgment on various grounds. Based upon pleadings, depositions and affidavits, the trial court granted defendants summary judgment and dismissed plaintiffs' complaint.

Plaintiffs seek a reversal on two grounds: (1) there are factual issues indicating the existence of a contract, its breach and resulting damages; (2) the facts show the existence of a duty by defendants to plaintiffs, its breach, and resultant damages due to negligence.

■ In order to sustain a summary judgment, defendants had the burden of showing an absence of a genuine issue of material fact as a matter of law. Tapia v. McKenzie, 83 N.M. 116, 489 P.2d 181 (Ct. App.1971). Here defendants had the burden of establishing an absence of a material issue of fact on the question of contract.

1. *Was the Evidence Sufficient to Create an Issue of Fact of Existence of Oral Contract, its Breach, and Resultant Damage?*

We are required to view the record in the light most favorable to plaintiffs. The record discloses the following:

Plaintiff Reinhart was a C.P.A. and an officer of Apollo. Defendant Schramek was a stockbroker employed by Rauscher Pierce.

On March 12, 1970, Reinhart and Schramek went to lunch at Four Hills Country Club to discuss the possibility of limiting losses on plaintiffs' shares of unlisted stocks to 10% of cost. These stocks were over-the-counter "bid and ask." They were held in the street name of Rauscher Pierce.

Reinhart told Schramek, he, Reinhart, was busy and could not watch the stocks; he wanted to set a maximum limitation on a loss of 10%; "take your loss and get out." Schramek agreed that Reinhart's thinking was sound. Reinhart inquired:

I want you to set a 10% limit and when it hits 10% sell it. Can you do this, sell it, will you do this?

Can you sell for me when the total decrease is 10%?

You will watch my stocks and you will do this?

Schramek answered, "yes" to each question. Reinhart relied on Schramek as an expert. He instructed Schramek to sell the stock when it went down 10% or was approaching 10% rapidly. This meant 10% below cost which included taxes and commissions. It was further agreed that plaintiffs' stock would be left in the street name of Rauscher Pierce. This agreement included any stock that Schramek would sell for him. Before May 6, 1970, plaintiffs purchased through defendants two unlisted "units," and one unlisted stock.

Between March 12 and April 8, 1970, Schramek called Reinhart almost every day. The next time Schramek called was April 15, 1970, and told Reinhart the stocks had gone down below 10%. On April 17, Schramek again called and informed Reinhart that two of the stocks had gone down quite a bit and below 10%. Schramek had not observed the decline prior to April 15, 1970, and stated he was sorry. The general consensus of the discussion was both hoped the market would turn around. Schramek did not feel like it was time to sell the stocks. Both were attempting to minimize the losses. Reinhart did not request a sale on April 15 or 17. Schramek gave him some more quotes thereafter. However, around May 1, 1970, Reinhart ordered the stocks sold at a loss.

The regulations of the National Association of Security Dealers (NASD) handle over-the-counter transactions. They provide in part that "Good faith in such matters is essential. In fact, the integrity of the spoken word is the keystone of the over-the-counter activities." Rauscher Pierce is a registered representative which tries to do the best it can for its customers according to the customers' instructions.

Defendants contend, (a) no agreement had come into being because of vagueness, uncertainty, ambiguity; (b) if there was an agreement, it was unenforceable because of impossibility of performance, the statute of frauds, and a lack of mutuality;

(c) if an agreement did exist, the subsequent conduct of Reinhart precludes recovery because of waiver, estoppel or an accord and satisfaction.

No reference was made to any citations or law affecting over-the-counter brokerage transactions. Over-the-counter market embraces all transactions not made on stock exchanges. A "stop order" or "stop loss order" applies only to listed stocks, and they are not applicable to this case.

(a) *Was the Agreement Vague, Uncertain or Ambiguous?*

The question is whether the terms of the oral contract are clear or whether an uncertainty or ambiguity exists. "The question whether an ambiguity or uncertainty exists is one of law." " * * * [I]f there is uncertainty or ambiguity, the intent of the parties may be ascertained from the language and conduct of the parties, the objects sought to be accomplished and the surrounding circumstances at the time." Jernigan v. New Amsterdam Casualty Company, 69 N.M. 336, 367 P.2d 519 (1961).

██ Limited to the evidence most favorable to plaintiffs, defendants have not pointed to any vagueness, uncertainty or ambiguity. They rely on Lamonica v. Bosenberg, 73 N.M. 452, 389 P.2d 216 (1964). A summary judgment was not involved. It adopted a principle that "When minds of the parties have not met on any part or provision of a proposed contract, all of its portions are a nullity." In the present case, the minds of the parties met. The law does not favor the destruction of contracts because of uncertainty. We are able to ascertain the parties' intentions with reasonable certainty. We have reviewed the cases cited from foreign jurisdictions. They are not in point on the issue of summary judgment. For purposes of summary judgment, we conclude that the agreement is reasonably definite and certain as to its terms so that the agreement could be performed.

Defendants agreed to sell plaintiffs' stock at a loss not to exceed 10% of cost.

The defendants failed to do so. We find no uncertainty or ambiguity as a matter of law.

(b) *Was the Agreement Unenforceable?*

· ▆▆▆ Wood v. Bartolino, 48 N.M. 175, 146 P.2d 883 (1944), defines "impossibility" of performance as a defense. Without repeating the definition, we do not believe the doctrine applies to the present case, as a matter of law, where summary judgment is granted. Neither can we take judicial knowledge of the market to determine the issue of impossibility. Compare Sanders v. Freeland, 64 N.M. 149, 325 P.2d 923 (1958).

▆▆ On the statute of frauds defense, defendants contend the oral contract was not to be performed within one year from the date of the agreement. This is based on Reinhart's statement that his agreement applied to any other stocks that he would purchase as long as Schramek was his broker. Reinhart never said he wanted defendants to hold his stock for a year or more. He could terminate the agency within a year. It was capable of performance within a year. Therefore, the rule does not apply. Compare Westerman v. City of Carlsbad, 55 N.M. 550, 237 P.2d 356 (1951). Restatement, Law of Agency, Second, § 414.

▆▆ The statute of frauds does not apply to the relationship between a broker and customer which creates a relation of trust and confidence. Mitchell v. Allison, 51 N.M. 315, 183 P.2d 847 (1947); Harris v. Dunn, 55 N.M. 434, 234 P.2d 821 (1951). Neither is the one year provision applicable. 49 Am.Jur. Statute of Frauds, §§ 28, 29; 37 C.J.S. Frauds, Statute of §§ 49, 50.

▆▆ It has been suggested that § 50A–8–319, N.M.S.A.1953 (Repl. Vol. 8, pt. 1), entitled Statute of Frauds, is applicable here. It is not because a "sale of securities" did not take place in this case. The facts here established an agency relationship, not a sale. Lindsey v. Stein Bros. and Boyce, Inc., 222 Tenn. 149, 433 S.W.2d 669 (1968). 21 A.L.R.3d 964, 977, § 4(d);

3 Anderson, Uniform Commercial Code, Second Edition, § 8–319:5, p. 789.

▆▆ (c) Finally, there was no lack of mutuality on the basis of Reinhart's testimony. Reinhart and Schramek agreed on the terms of sale in the event of loss.

▆▆ We conclude that there is sufficient evidence to create an issue of fact as to the existence of an enforceable agreement between the parties, its breach, and resultant damage.

2. *Were There Defenses of Waiver, Estoppel and Accord and Satisfaction as a Matter of Law?*

Defendants contend that the defenses of waiver, estoppel and accord and satisfaction all relate to Reinhart's conduct when the market declined, and the loss in his investments became apparent to him.

(a) *Waiver*

▆▆ "Waiver" is the intentional abandonment or relinquishment of a known right. An intention to waive a right is ordinarily a question of fact. Chavez v. Gomez, 77 N.M. 341, 423 P.2d 31 (1967). Reinhart testified that he considered defendants obligated to sell even when the market went below 10% loss. This was not consent to a different course of conduct. He was trying to minimize the loss. Schramek did not feel that a sale should be made. This did not constitute a defense under summary judgment. See Ed Black's Chevrolet Center, Inc. v. Melichar, 81 N. M. 602, 471 P.2d 172 (1970).

(b) *Estoppel*

▆▆ "Estoppel" is the preclusion, by acts or conduct, from asserting a right which might otherwise have existed, to the detriment and prejudice of another, who, in reliance on such acts and conduct, has acted thereon. Miller v. Phoenix Assur. Co., Limited, of London, 52 N.M. 68, 191 P.2d 993 (1948). Defendants have not pointed to any acts or conduct of Reinhart relied on by defendants which was detrimental or prejudicial to them and upon which they acted. Reinhart had a duty to

act reasonably under the circumstances. Mogollon Gold & Copper Co. v. Stout, 14 N.M. 245, 91 P. 724 (1907). This did not constitute a defense under summary judgment.

### (c) *Accord and Satisfaction*

■ An accord and satisfaction is defined in White v. Ragle, 82 N.M. 644, 485 P.2d 978 (Ct.App.) decided May 21, 1971. Reinhart's evidence, viewed in its best light, shows that when Reinhart ordered the stocks sold it was not done in settlement and satisfaction of the losses sustained. It was done to attempt to mitigate damages.

None of the defendants' alleged defenses are sufficient as a matter of law to sustain a motion for summary judgment.

### 3. *Was the Evidence Sufficient to Create an Issue of Fact of Existence of a Negligence Action?*

■ The relationship between Schramek and Reinhart was that of agent and principal. The contract of sales is between Reinhart and a third party, Schramek acting as the customer's agent in making the contract. This is fiduciary in nature and Schramek must exercise his duties with the utmost good faith and integrity. Meyer, The Law of Stock Brokers and Stock Exchanges, §§ 39, 40. See Iriart v. Johnson, 75 N.M. 745, 411 P.2d 226 (1965); Twomey v. Mitchum, Jones & Templeton, Inc., 262 Cal.App.2d 690, 69 Cal.Rptr. 222, (1968).

■ Schramek had a duty to use reasonable care to obtain terms which best satisfy the manifested purposes of Reinhart. Restatement of the Law, Agency Second, § 424. Defendants had a duty to exercise reasonable skill and ordinary diligence and not to act negligently. Wilson v. Hisey, 147 Cal.App.2d 433, 305 P.2d 686 (1957); Mattieligh v. Poe, 57 Wash.2d 203, 356 P.2d 328, 94 A.L.R.2d 464 (1960); 12 C.J.S. Brokers § 26; 12 Am.Jur.2d Brokers, § 96.

■ There is some evidence that Schramek did not know about the drop in the stock at the time it occurred, and did not feel like it was time to sell. This conduct, together with other facts and circumstances relating to breach and damages, is sufficient to create a genuine issue of fact as to defendants' liability for negligence. Defendants raised no affirmative defenses to plaintiffs' claim of negligence.

The summary judgment is reversed.

It is so ordered.

HENDLEY and COWAN, JJ., concur.