Elsie **PIERLUISI and Leonardo Segarra Silva, Individually, as conjugal partners, etc., et al., Plaintiffs,**

v.

**E. R. SQUIBB & SONS, INC. and Gustavo Bergnes Durán, Defendants.**

**Civ. No. 75–1058.**

United States District Court,
D. Puerto Rico.

March 1, 1977.

Harvey B. Nachman, Santurce, P. R., for plaintiffs.

Iván M. Fernández, Hato Rey, P. R., Manuel A. Guzmán, San Juan, P. R., for defendants.

## OPINION AND ORDER

PESQUERA, District Judge.

The present action is one for money damages for personal injuries claimed to have been sustained by coplaintiff Elsie Pierluisi de Segarra as a result of having been injected in the deltoid area with a drug known as Kenalog 40, a product of codefendant E.R. Squibb & Sons, Inc. (herein Squibb). The claim against this codefendant is based upon a theory of negligence and not upon a theory of defective product. All other plaintiffs, the spouse and children of Mrs. Pierluisi, claim derivative damages as a result of the alleged injuries claimed to have been sustained by said coplaintiff.

Jurisdiction over the subject matter is invoked pursuant to Title 28 United States Code, Section 1332; it is undisputed, and the Court finds such diversity jurisdiction to be present.

The matter is now before us on codefendant Squibb's motion for summary judgment in its favor pursuant to Rule 56 of the

Federal Rules of Civil Procedure. In support of its motion for summary judgment Squibb makes reference to the following evidentiary material in record which this Court has duly considered: codefendant Bergnes Durán's deposition and his response to Squibb's interrogatories, the allegations of the second amended complaint and the pretrial stipulation and order of December 7, 1976.

Codefendant Bergnes Durán has not filed any response to Squibb's motion for summary judgment. Plaintiffs filed their opposition conceding as uncontested Squibb's statement of undisputed material facts but at the same time claiming that such undisputed facts are only peripherally related to plaintiffs' theory as against Squibb.

Upon examination of the documents on record the Court finds the following material facts to be undisputed:

On March 3, 1975 coplaintiff Elsie Pierluisi de Segarra (Mrs. Pierluisi) visited Dr. Bergnes Durán. The latter took a history from Mrs. Pierluisi, performed a clinical examination, took her temperature as well as her arterial and normal pressure, a fluoroscopy, and found Mrs. Pierluisi had congestion of the bronchial branches.[1]

Dr. Bergnes Durán then prescribed a cough syrup called Novahistine and Kenalog 40 injection. He told Mrs. Pierluisi to go to the drugstore and return with the injection for administration in his office.[2] Kenalog 40 injection is a prescription drug manufactured, distributed and sold by Squibb.[3]

When Mrs. Pierluisi returned to Dr. Bergnes' office that day the package containing the Kenalog 40 injection included literature on the medicine, a package insert which contained the same information made available to doctors in the Physicians Desk Reference Book.[4]

Dr. Bergnes reads the English language quite well as far as medicine is concerned and he reads the medical journals published in the United States which come to his office, some four or five journals. He is also familiar with the Physicians Desk Reference Book of which he maintains copies and which he uses for reference purposes as to medicines by trade names.[5]

Dr. Bergnes first became familiar with Squibb's Kenalog 40 injection ten or twelve years prior to his deposition through Squibb's medical detail men as well as through the product's written propaganda.[6] Through the years he has been receiving literature from Squibb concerning Kenalog 40 injection, literature which he has read.[7] This literature he has received both through the mail as well as from Squibb's detail men. He has never had any difficulty understanding the instructions given to him in the medical literature concerning Kenalog 40 injection.[8] Moreover, he was completely familiar with all the warnings and contraindications in the Physicians Desk Reference Book.[9]

It is clear, and so this Court finds, that no genuine material factual issue exists for the purpose of adjudicating Squibb's motion for an accelerated judgment.

Since the jurisdiction of this Court is predicated on diversity of citizenship, the Court must sit as a local court, that is, a Commonwealth of Puerto Rico Court, with respect to a determination of the relevant legal principles. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

---

1. Deposition Bergnes Durán, pp. 13–15.

2. Deposition Bergnes Durán, pp. 15–16.

3. Paragraphs 7 and 8 of the second amended complaint; stipulated by the parties in their pretrial stipulation and order dated December 7, 1976.

4. Deposition Dr. Bergnes, pp. 38–39; Dr. Bergnes' answers 70 and 71 to Squibb's interrogatories.

5. Deposition Bergnes Durán, pp. 9–12.

6. Deposition Bergnes Durán, pp. 12–13.

7. Deposition Bergnes Durán, p. 28.

8. Dr. Bergnes' deposition, p. 28.

9. Dr. Bergnes' deposition, p. 18.

Codefendant Squibb is charged with negligence by plaintiffs in having marketed the product in question in Puerto Rico in the English language only and without any clear warning of danger or symbol of danger on the package or in the package insert, in marketing said product and only notifying the medical profession of the dangers, contraindications, warnings and methods of administration, in relying upon the physicians to advise and warn the patients of the dangers to be encountered and in otherwise failing to exercise due care and caution to prevent the happening of the occurrence.

The issue before us concerns the standard of care imposed upon a manufacturer of prescription drugs to adequately warn with respect to such products. Such an issue has never been considered by the Supreme Court of the Commonwealth of Puerto Rico.

■ The absence of any such precedent does not free this Court from its responsibility of deciding the question before it. *Meredith v. Winter Haven,* 320 U.S. 228, 237, 64 S.Ct. 7, 88 L.Ed. 9 (1943). Even though common law precedents are not obligatory on Puerto Rico courts the Supreme Court of Puerto Rico has repeatedly held that such common law can be utilized by Commonwealth courts when it is found to be useful and persuasive. *Oliveròs v. Abreu,* opinion of the Supreme Court of Puerto Rico of February 9, 1973, 101 DPR 209, 226 (1973), and cases therein cited; *Futurama Import Corp. v. Trans-Caribbean Airways,* opinion of the Supreme Court of Puerto Rico of January 30, 1976, Bar Ass. of P.R. Adv.Sh. 116 of 1976; *Municipality of Vega Baja v. Smith,* opinion of the Supreme Court of Puerto Rico of July 10, 1919, 27 DPR 632, 637–638 (1919); also see our pronouncement on *Torruellas v. Hartford Accident Indemnity Co.,* 357 F.Supp. 311, 314 (DPR 1972).

■ There is in fact an abundant source of common law precedent regarding this issue which we deem to correctly state the law on the subject.

"The duty of the ethical drug manufacturer [a prescription drug as distinguished from a proprietary or patent drug sold over the counter] to warn extends, then, to all members of the medical profession who come into contact with the patient in a decision-making capacity. To satisfy this duty, the manufacturer must utilize methods of warning which will be reasonably effective, taking into account both the seriousness of the drug's adverse effects and the difficulties inherent in bringing such information to the attention of a group as large and diverse as the medical profession. See *Sterling Drug, Inc. v. Yarrow,* 408 F.2d 978 (8th Cir. 1969). The warning should be sufficient to appraise a general practitioner as well as the 'unusually sophisticated medical man' of the dangerous propensities of the drug. *Parke-Davis & Co. v. Stromsodt,* 411 F.2d 1390, 1400 (8th Cir. 1969). In short, 'it is incumbent upon the manufacturer to bring the warning home to the doctor'. Rheingold, Products Liability—The Ethical Drug Manufacturer's Liability, 18 Rutgers U.L.Rev. 947, 993 (1964)." *McEwen v. Ortho Pharmaceutical Corp.,* 270 Or. 375, 528 P.2d 522, 529 (1974).

■ It is the prevailing general rule that the duty of adequate warning by the manufacturer of an ethical drug is discharged by its warning of hazards to doctors.[10]

■ The undisputed facts clearly establish that Squibb's warnings were adequate and did bring the warning home to the doctor. The fact that they were in the English language was a non-contributory irrelevant circumstance within the setting of the undisputed facts of this case.

10. *Davis v. Wyeth Laboratories, Inc.,* 399 F.2d 121, 130 (9th Cir. 1968); *Basko v. Sterling Drug, Inc.,* 416 F.2d 417, 426 (2 Cir. 1969); *Yarrow v. Sterling Drug, Inc.,* 263 F.Supp. 159, 162 (D.S.D.1967); *Schenebeck v. Sterling Drug, Inc.,* 423 F.2d 919, 922 (8th Cir. 1970); *Hoff-* *man v. Sterling Drug, Inc.,* 485 F.2d 132 (3rd Cir. 1973); *Reyes v. Wyeth Labs.,* 498 F.2d 1264 (5th Cir. 1974); *Hines v. St. Joseph's Hospital,* 86 N.M. 763, 527 P.2d 1075 (1974); *Carlsen v. Javureck,* 526 F.2d 202 (8th Cir. 1975).

The language in *Johnston v. UpJohn Company,* 442 S.W.2d 93, 95 (Kan.City, Mo. App.1969) is particularly applicable to this case:

"The evidence showed that each package of Lincocin was accompanied by what is called a package insert concerning the properties of the drug, proper dosages, precautions, etc. The plaintiff's doctor testified that he had read and was familiar with the contents of this package insert. In the case of prescription drugs such as Lincocin, warning to the medical profession in such manner is all that is required and constitutes warning to the patient as well."

*Mulder v. Parke Davis & Company,* 288 Minn. 332, 181 N.W.2d 882, 885 (1970) is likewise appropriate:

"We agree that where the only issue is failure to communicate a warning, the manufacturer is not liable if the doctor was fully aware of the facts which were the subject of the warning. *Westerberg v. School Dist. No. 792,* 276 Minn. 1, 8, 148 N.W.2d 312, 316; *Magee v. Wyeth Laboratories, Inc.,* 214 Cal.App.2d 340, 351, 29 Cal.Rptr. 322, 328. As the Court said in *Magee:* '. . . Failure [of the doctor] to follow an unchallenged method of use prescribed by the manufacturer constitutes a break in causation which exonerates the manufacturer from any liability.' "

Finally, we turn to plaintiffs' contention that there was no warning to the patient herself of the dangers to be encountered and that it was negligent for Squibb to rely upon the physician to advise and warn Mrs. Pierluisi of such dangers.

Once again we find overwhelming and persuasive common law precedent on this question contrary to plaintiffs' position.

A manufacturer's duty is to adequately warn the attending physician and has no duty to warn the lay public regarding pre-scription drugs. The emphasis of the doctrine is carefully limited to prescription drugs, those drugs which cannot be obtained by anyone except on a doctor's prescription presented at a drugstore. An entirely different rule would be applicable in connection with drugs sold over the counter to anyone who asks for them. *Stottlemire v. Cawood,* 213 F.Supp. 897, 899 (D.D.C.1963). As stated in *Gravis v. Parke Davis & Company,* 502 S.W.2d 863, 870 (Tex.Civ.App. 1973):

" . . . it is unreasonable to demand that the manufacturer of drugs specifically warn each and every patient that receives drugs prescribed by the physician or other authorized persons. The entire system of drug distribution in America is set up so as to place the responsibility of distribution and use upon professional people. The laws and regulations prevent prescription type drugs from being purchased by individuals without the advice, guidance and consent of licensed physicians and pharmacists. These professionals are in the best position to evaluate the warnings put out by the drug industry." [11]

The rationale of the rule appears well expressed in *Reyes v. Wyeth Labs.,* 498 F.2d 1264 (5th Cir. 1974) where the Court stated:

"This special standard for prescription drugs is an understandable exception to the Restatement's general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products. See Restatement (Second) of Torts, Section 388 (1965). Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, an individu-

---

**11.** For other cases holding that a manufacturer's duty is to warn the attending physician and has no duty to warn the lay public regarding prescription drugs, see: *Mulder v. Parke Davis & Co., supra,* at p. 885; *Hoffman v. Sterling* *Drug, Inc.,* 485 F.2d 132 (3rd Cir. 1973); *Hines v. St. Joseph's Hospital,* 86 N.M. 763, 527 P.2d 1075, 1077 (1974); *Johnston v. UpJohn Company, supra,* at p. 94.

**696**

alized medical judgment bottomed on a knowledge of both patient and palliative. Pharmaceutical companies then, who must warn ultimate purchasers of dangers inherent in patent drugs sold over the counter, in selling prescription drugs are required to warn only the prescribing physician, who acts as a 'learned intermediary' between manufacturer and consumer." [12]

In view of the above, codefendant Squibb's motion for summary judgment is granted and there being no just reason for delay the entry of judgment, the Clerk is directed to enter judgment dismissing the complaint against said codefendant, with prejudice and costs.

12. This case also restates the exception to the exception previously discussed, which exception imposes upon the manufacturer of prescription drugs the duty to see that the warning in fact reaches the ultimate consumer where no individualized medical judgment intervenes between the manufacturer of the prescription drug and the ultimate consumer. Where there is no physician to make an individualized balancing of the risks the very justification for the prescription drug exception evaporates. Also see *Davis v. Wyeth Laboratories,* 399 F.2d 121 (9th Cir. 1968). Such an exception to the exception is clearly not applicable to the case at bar.