166 N.J. Super. 383 (1979)
399 A.2d 1047
TERESE JONES AND DAVID JONES, PLAINTIFFS,
v.
NICHOLAS SPORTELLI AND JULIUS SCHMID, INC., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 14, 1979.
*384 Mr. Carl Valore, Jr., for plaintiffs (Messrs. Valore, McAllister, Aron & Westmoreland, P.C., attorneys).
Mr. Burchard V. Martin for defendant Sportelli (Messrs. Martin, Crawshaw & Mayfield, P.C., attorneys).
Mr. Louis Niedelman for defendant Julius Schmid, Inc. (Messrs. Cooper, Perskie, Katzman, April, Niedelman & Wagenheim, P.C. attorneys).
*385 STEEDLE, J.S.C.
This is a personal injury action in which unresolved issues regarding the construction and interpretation of the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. are raised.
Terese Jones and her husband David, plaintiffs herein, seek damages for injuries sustained as a result of Mrs. Jones' use of a Saf-T-Coil intrauterine device manufactured by defendant Julius Schmid, Inc., correctly known as Schmid Laboratories, Inc., and inserted by defendant Dr. Nicholas Sportelli. Plaintiffs allege that the IUD caused the perforation of Mrs. Jones' uterus, that Mrs. Jones became pregnant while she suffered this injury, and consequently, necessarily underwent surgery for the removal of the IUD as well as an abortion. In the fourth count of their complaint plaintiffs claim, among other things, that defendant Schmid violated the provisions of the Consumer Fraud Act. More specifically, plaintiffs allege that said defendant engaged in practices violative of the act in that, with respect to its marketing of the Saf-T-Coil IUD, it
* * * [m]ade unconscionable and fraudulent statements in its advertising and information distributed to contraceptive consumers, omitted to warn as to the risks of perforation, failed to warn as to the use of a contraceptive foam during the first months after insertion [of the IUD] and during the most fertile cycle [, and additionally,] misrepresented the [IUD's] effectiveness. * * *
For this violation plaintiffs contend they are statutorily entitled to treble compensatory damages, including but not limited to treble recompense for medical expenses incurred, pain and suffering and loss of consortium.
Defendant moves for summary judgment disposition of the fourth count. For purposes of its motion, defendant assumes that the facts of this case are as pleaded by plaintiffs, but argues that as a matter of law the proscriptions of the act are inapplicable to the sale of an IUD, principally because such an item is a prescription-legend product not directly available to members of the general public and obtainable only by, on *386 or through the order of a licensed physician. Moreover, defendant claims that even if the act is applicable, the award of treble damages is statutorily limited to triple the actual cost of the IUD and cannot legally be extended to include three fold recovery of all compensatory damages sought.
Accordingly, the disposition of this motion requires that this court now decide two questions of first impression. This court must first determine whether the sale of an IUD is a transaction within the purview of the act, and if necessary, must then define the extent to which the act authorizes treble damages.
The act makes unlawful the following conduct:
The act, use or employment of any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise * * * is declared to be an unlawful practice. * * * [N.J.S.A. 56:8-2]
The above provision must be read in conjunction with the definitional section of the act, which defines the following terms:
(a) The term "advertisement" shall include the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan;

* * * * * * * *
(c) The term "merchandise" shall include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale;
(d) The term "person" as used in this act shall include any natural person or his legal representative, partnership, corporation, company, trust, business entity or association * * *;
(e) The term "sale" shall include any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute. [N.J.S.A. 56:8-1 (a), (c), (d), (e) (emphasis denotes amendment)] *387 Since defendant assumes that the facts are as pleaded by plaintiffs, this court assumes that defendant did engage in the type of conduct violative of N.J.S.A. 56:8-2, and in view of the broad definitions attributed to the terms "merchandise" and "sale," it cannot be credibly argued that defendant's sale of an IUD upon a physician's order is not within the scope of the act as literally construed. However, the paramount guiding factor in the interpretation of any statute is legislative intent, not literal construction, and if the Legislature of this State did not intend that the act should apply to the concerned sale, the fact that the sale is within the scope of the act literally construed is not by itself determinative of the ultimate issue. See Union Cty. Bd. of Chosen Freeholders v. Union Cty. Park Comm'n, 41 N.J. 333, 337 (1964); Board of Ed. v. Hoek, 38 N.J. 213, 231 (1962); Hoffman v. Hock, 8 N.J. 397, 408 (1952). The scope of the act must effectuate the legislative design ascertained from the language of the statute or inferred on grounds of policy and reasonableness. See Harvey v. Board of Chosen Freeholders, 30 N.J. 381, 392 (1959).
While the courts of this State have not yet determined whether the sale of an IUD is within the act's purview, they did inquire into the applicability of the act to transactions of a different nature. In Neveroski v. Blair, 141 N.J. Super. 365 (App. Div. 1976) (per curiam), the court held that a real estate brokerage firm which deliberately engaged in the type of conduct violative of the act was not thereunder liable to vendees of residential property because the sale of real estate was not within the act's scope, and in support of its decision, the court emphasized the Legislature's deletion of the term "real estate" from a proposed amendment expanding the statutory definition of "merchandise."[1]Id. at 377-379. *388 However, of particular import is the following general observation of the court:
* * * [I]t is our considered opinion that the entire thrust of the Consumer Fraud Act is pointed to products and services sold to consumers in the popular sense. Such consumers purchase products from retail sellers of merchandise consisting of personal [sic] property of all kinds or contract for services of various types brought to their attention by advertising or other sales techniques. The legislative language throughout the statute and the evils sought to be eliminated point to an intent to protect the consumer in the context of the ordinary meaning of that term in the market place. [at 378; dictum; emphasis in original; footnote omitted].
Thereafter, in Daaleman v. Elizabethtown Gas Co., 77 N.J. 267 (1978), rev'g 150 N.J. Super. 78 (App. Div. 1977), the Supreme Court rejected the Appellate Division's determination that a privately-owned public utility which allegedly fraudulently manipulated its customer billings was subject to the act's proscriptions and penalties. Specifically, the Supreme Court held that such fraudulent manipulation was not a "sale" within the meaning of the act, and in addition, recognized that since customer billing was to a large degree committed to the special competence of the Public Utilities Commission and subjected to its regulation, exclusive jurisdiction of the allegations of fraud and the authority to award relief was vested in that administrative body. Id. at 269-272.
The above-cited cases are clearly not dispositive of the present case, but they do evidence a judicial perception of a need to reasonably confine the ambit of the act despite broad statutory language, so that its enforcement properly reflects legislative intent, however ascertained. Whether this need to limit should render the act inapplicable to the sale of an IUD must now be determined.
As heretofore stated, in support of its contention that the sale of an IUD is not within the scope of the act, defendant emphasizes the fact that an IUD is a prescription-legend product. Implicit in this argument is the suggestion that the concerned sale is not within the act's purview because *389 a manufacturer of a prescription-legend product need only warn the medical profession of the risks attendant upon the product's use, and need not warn ultimate consumers as well. It is true that, under the law of some states, a manufacturer of such a product satisfies its common law duty to warn by properly advising the medical profession of dangers and possible side effects. E.g., McCue v. Norwich Pharmacal Co., 453 F.2d 1033, 1035 (1 Cir.1972) (applying New Hampshire law); Davis v. Wyeth Laboratories, Inc., 399 F.2d 121, 130 (9 Cir.1968) (applying Montana law); Carmichael v. Reitz, 17 Cal. App.3d 958, 989, 95 Cal. Rptr. 381 (D. Ct. App. 1971); Hines v. St. Joseph's Hosp., 86 N.M. 763, 765, 527 P.2d 1075 (Ct. App. 1974), cert. den. 87 N.M. 111, 529 P.2d 1232 (Sup. Ct. 1974); Incollingo v. Ewing, 444 Pa. 263, 288, 282 A.2d 206 (Sup. Ct. 1971); Terhune v. A.H. Robins Co., 90 Wash. 9, 577 P.2d 975 (Sup. Ct. 1978). Whether the law of New Jersey is in accord has not yet been established, and in view of this court's disposition of defendant's contention, the issue need not now be resolved. The lack of a duty to warn ultimate consumers may be relevant to the issue of whether a manufacturer of a prescription-legend product engaged in conduct violative of N.J.S.A. 56:8-2 by knowingly concealing, suppressing or omitting a material fact with the intent that ultimate consumers rely upon the concealment, suppression or omission. However, in light of the possibility that a manufacturer might engage in unlawful practices regardless of whether it has a duty to warn, the principle of law does not serve to exclude the sale of a prescription-legend product from the protection afforded by the act. It is reasonable to conclude that the Legislature did not intend otherwise.
In reliance upon the Neveroski dictum, defendant argues that the IUD which caused plaintiffs' damages was not purchased by Mrs. Jones as a "consumer in the context of the ordinary meaning of the term marketplace," but instead was provided to her as part of a medical service *390 furnished by her gynecologist, and accordingly argues that plaintiffs are not entitled to the protections of the act. This court disagrees. The statutory definition of the term "sale" was liberally expanded by the Legislature and it now encompasses any "attempt directly or indirectly to sell." N.J.S.A. 56:8-1(e). The provision of an IUD to a gynecologist essentially constitutes, at the very least, an indirect attempt to sell the IUD to a wanting patient with the concomitant expectation of monetary return. Upon actual sale or distribution, economic benefit accrues to the manufacturer, and although the manufacturer might receive payment from the gynecologist, it is unrealistic to suggest that the patient is not, in the ordinary course of business, ultimately charged with the cost. Moreover, such an unrealistic conclusion has long been rejected under the products liability law of this State. See generally, Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 370-84 (1960).
There being no reason justifying the exclusion of the sale of an IUD from the act's purview, the act's proscriptions and penalties are applicable, and this court must determine the extent to which plaintiffs are entitled to the treble damages sought.
The act confers a private right of action on any individual sustaining certain injury as a result of a statutory violation and further provides that treble damages shall be awarded. It explicitly provides as follows:
Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit. [N.J.S.A. 56:8-19; emphasis supplied]
*391 Admittedly, this provision is subject to two possible constructions, one liberally authorizing treble damages and the other strictly confining them. On the one hand, the first sentence of the provision can be viewed as conferring standing to sue on "[a]ny person who suffers any ascertainable loss of moneys or property," and the second sentence can be construed as authorizing threefold recovery for any and all damages sustained by any such person. On the other hand, in addition to conferring standing to sue, the first sentence, when read in conjunction with the second, may be construed as a limitation on the second by permitting treble damages for "any ascertainable loss of moneys or property" only, and not for any and all losses sustained.
Statutes which attempt to establish a right not recognized by or in derogation of the common law are strictly construed so as to avoid any change not clearly articulated and intended. State v. Western Union Tel. Co., 12 N.J. 468, 486, app. dism. 346 U.S. 869, 74 S.Ct. 124, 98 L.Ed. 379 (1953); Blackman v. Iles, 4 N.J. 82, 89 (1950); Carlo v. Okonite-Callender Cable Co., 3 N.J. 253, 265 (1949); Five-house v. Passaic Valley Water Comm'n, 127 N.J. Super. 451, 456 (App. Div. 1974). At common law compensatory damages are such as will reimburse an injured party for injury sustained and nothing more. Mullen v. Board of Ed., 81 N.J. Super. 151, 159 (App. Div. 1963). An award of treble compensatory damages, such as is authorized by N.J.S.A. 56:8-19, is an award in excess of a loss actually sustained and is repugnant to the common law. Therefore, pursuant to the above rule of statutory construction, the right to such an award must be statutorily established in clear and precise terms. While it is clear that the Legislature intended to alter common law results by its enactment of N.J.S.A. 56:8-19, in view of the ambiguity on the face of that provision and the lack of a precise articulation of legislative intent, the provision must be strictly construed and interpreted so as to authorize threefold recovery for "any ascertainable loss of moneys or property" only. Accordingly, if plaintiffs *392 can prove a statutory violation and damage resulting therefrom, they are statutorily entitled to treble damages for any such loss, which may include the loss of moneys expended for the purchase and insertion of the IUD and for the purpose of obtaining medical services needed to correct physical injury caused thereby. Since monetary damages for pain and suffering are awarded because of a loss of good health and not on the basis of a loss of moneys or property, treble recompense for pain and suffering is not statutorily authorized and cannot be recovered. Likewise, since a loss of consortium is a loss of the company and affection of one's spouse, and again, not a loss of moneys or property, plaintiffs are not entitled to treble recompense for that loss either. This rationale shall extend to any specific loss which plaintiffs can prove, but shall not be interpreted to in any way limit the extent of recovery to which plaintiffs are entitled under the common law.
Defendant's motion for summary judgment is denied except insofar as this court limits the recovery of treble damages.
NOTES
[1] The court's holding pertained to a sale of real estate which occurred prior to the effective date of another amendment to the act, and therefore may not properly reflect the applicability of the act in its present form. Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271 (1978); Neveroski, 141 N.J. Super. at 377, n. 3.