696 So.2d 136 (1997)
Steve DOUGLASS, et al.
v.
ALTON OCHSNER MEDICAL FOUNDATION, et al.
No. 97-CA-25.
Court of Appeal of Louisiana, Fifth Circuit.
May 28, 1997.
Rehearing Denied July 17, 1997.
Thomas W. Mull, Covington, Carl Duhon, John N. Perkins, Lafayette, for Plaintiffs/Appellants.
Charles L. Chassaignac, Carmelite M. Bertaut, New Orleans, for Defendant/Appellee The American Association of Blood Banks, Inc.
C. William Bradley, Jr., Lawrence J. Hand, Jr., New Orleans, for Defendant/Appellee Terry D. King, M.D.
Before WICKER, CANNELLA and DALEY, JJ.
*137 DALEY, Judge.
Plaintiffs, Steve Douglass, individually and on behalf of his minor child, Annie Marie Douglass and the minor children, Adam Ruben Douglass and Andy Alton Douglass, and Kathy Douglass, brought suit against Alton Ochsner Medical Foundation (hereafter Ochsner), John L. Ochsner, M.D. (hereafter Dr. Ochsner), Terry D. King, M.D. and the American Association of Blood Banks, Inc. (hereafter AABB) alleging that the defendants were negligent in their treatment of Annie Douglass, particularly with regard to the transfusion of blood, which resulted in the child contracting AIDS.
The AABB moved for summary judgment alleging they are a nonprofit organization with no regulatory, licensing or police power over member blood banks and that they owe no duty to individuals as they do not collect, store or transfuse blood. Furthermore, Annie was given blood in January 1983, a time when AIDS was in its infancy and it was unclear how the disease was transmitted.
In granting the AABB's Motion For Summary Judgment, the trial Judge commented that the AABB was similar to a Bar Association and that they had no duty to the individual public for the negligence of its members.
Dr. King also moved for partial summary judgment alleging that as he was Annie's pediatric cardiologist who referred the child to Dr. Ochsner for surgery, he had no duty to warn plaintiffs of the risks associated with the surgery. Because there is no genuine issue of material fact concerning his treatment of Annie, he contends he has no liability to the plaintiffs. The trial court agreed and concluded that Dr. King was not liable to plaintiffs under a failure to warn theory.
Plaintiffs appeal the judgments rendered in favor of the AABB and Dr. King. For the following reasons, we affirm the grant of summary judgment in favor of Dr. King, reverse the grant of summary judgment in favor of the AABB and remand for further proceedings. Because there is no longer any prejudice to the defendants in allowing plaintiffs to amend their petition, we order that plaintiffs are granted leave to file their First Supplemental and Amending Petition.
On January 24, 1983, Annie Marie Douglass, then three years old, underwent heart surgery at Ochsner Foundation Hospital. The surgery was performed by Dr. John Ochsner to whom Annie was referred by her pediatric cardiologist, Dr. Terry King. Six units of blood or blood products were administered to Annie as a result of the surgical procedure. In February of 1993, at 13 years of age, Annie tested positive for HIV. One of the donors of the six units of blood Annie received has since tested positive for HIV/AIDS.
This suit was filed on December 26, 1995, and plaintiffs asked for an expedited trial date due to the seriousness of Annie's disease. An initial trial date of July 22, 1996, was selected; however, the trial was continued to September 30, 1996, and Judge Chehardy indicated that this trial date would not be upset. The petition alleged Dr. King breached the standard of care by his failure to warn plaintiffs of the risk of contracting AIDS through blood transfusions and that he failed to timely diagnose Annie as being infected with HIV. Dr. King moved for summary judgment on plaintiffs' allegations that he had a duty to warn them of the risks associated with the pending surgery. Dr. King contends, as a referring physician, he had no duty to warn of the risks associated with surgery as this is left to the surgeon who performs the procedure. See Davis v. St. Charles General Hospital, 598 So.2d 1244 (La.App. 4 Cir.1992). Plaintiffs argue he was more than simply a referring physician and sought discovery from Dr. King to determine what his practice concerning warning of risks of surgery was to other patients. Dr. King objected to the discovery requests. Plaintiffs filed a Motion To Compel Answers and argued the court should not render judgment until the discovery was completed. Notwithstanding the outstanding discovery, the trial court granted Dr. King's Motion For Summary Judgment.
The AABB also moved for summary judgment, arguing they did not owe plaintiffs a duty under Louisiana law and, if they did, plaintiffs cannot establish the remaining elements *138 to prove their cause of action. This argument is based on the fact the AABB has no regulatory powers over member blood banks. Plaintiffs contend the powers of the AABB are much stronger than the AABB would have the court believe.
On appeal, plaintiffs argue the trial court erred in granting both summary judgments.
A Motion for Summary Judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981); Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1182. The burden is on the mover to establish that no material fact issues exist. Schroeder v. Board of Supervisors of La. State Univ., 591 So.2d 342, 345 (La.1991). Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. Chaisson v. Domingue, 372 So.2d 1225, 1227 (La.1979); Reynolds, supra. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder, 591 So.2d at 345; Reynolds, supra.
The sole purpose of a Motion for Summary Judgment is to determine in advance of trial whether a genuine issue of material fact exists between the litigants. A summary judgment is not a substitute for a trial on the merits. Leonard v. Stephens, 588 So.2d 1300 (La.App. 2d Cir.1991). It is not the function of the trial court on a Motion for Summary Judgment to determine or even inquire into the merits of the issues raised. The weighing of conflicting evidence on a material fact has no place in a summary judgment procedure. A Motion for Summary Judgment is not appropriate for disposition of cases requiring a judicial determination of subjective facts, such as motive, intent, good faith, or knowledge. Watson v. Cook, 427 So.2d 1312 (La.App. 2d Cir.1983).
Concerning the grant of summary judgment in favor of Dr. King, we find no error in the trial court judgment notwithstanding the fact discovery is outstanding. Dr. King is a pediatric cardiologist who referred Annie to Dr. John Ochsner for possible surgical intervention to correct a heart defect. Dr. Ochsner examined Annie and determined she should undergo surgery. Dr. King was not a surgeon and as a referring physician, had no duty to warn plaintiffs of the risks associated with the surgery. Davis, supra. Plaintiffs' assertions that summary judgment was improper because Dr. King was "far more than a referring physician" is simply conclusory allegations insufficient to defeat summary judgment.
In determining whether the court erred in granting summary judgment in favor of the AABB, a duty/risk analysis is appropriate. In order to find liability, the AABB had to owe a duty to plaintiffs; breach the duty; the breach of the duty was legal cause in fact of the injuries; and plaintiffs sustained damages. Fowler v. Roberts, 556 So.2d 1 (La.1989). To determine whether the AABB owed plaintiffs a duty, we must consider the nature of the potential harm along with the status and power of the organization.
The standard of conduct required of persons in Louisiana in their relationships with one another as a basis of delictual liability is set forth in La.Civ.Code arts. 2315 and 2316.
Article 2315 provides in pertinent part:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Article 2316 provides:
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
Accordingly, under these articles the elements of a cause of action are fault, causation and damage. The conduct of which the plaintiff complains must be a cause-in-fact of the harm. After determining causation, the court must also determine what was the duty imposed on defendant, and whether the risk *139 which caused the accident was within the scope of the duty. A breach of a duty on the part of the defendant which was imposed to protect against the risk involved makes the offender negligent under the above articles. Vicknair v. Hibernia Building Corp., 479 So.2d 904 (La.1985). See also Gresham v. Davenport, 537 So.2d 1144, 1146 (La.1989). "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Prosser and Keeton on The Law of Torts (5th ed. 1984). The imposition of a duty depends on a case by case analysis. Gresham, supra.
Our research has found one case in which the AABB was held to be liable to an individual who contracted AIDS following a blood transfusion, Snyder v. American Association of Blood Banks, 144 N.J. 269, 676 A.2d 1036 (1996). That case found the AABB owed Snyder a duty of care as it sought and cultivated the responsibility to help ensure the safety of the nation's blood supply. This view is supported by the numerous cases absolving blood banks from liability to transfusion recipients upon a showing of compliance with the guidelines of the AABB and conduct in accordance with the conduct of other blood banks similarly situated. See Sawyer v. Methodist Hospital, 522 F.2d 1102 (6th Cir.1975); Juneau v. Interstate Blood Bank, Inc., 333 So.2d 354 (La.App. 3 Cir. 1976) cert. denied, 337 So.2d 220 (La.1976); Hines v. St. Joseph's Hospital, 86 N.M. 763, 527 P.2d 1075 (1974); Hutchins v. Blood Services of Montana, 161 Mont. 359, 506 P.2d 449 (1973); Tufaro v. Methodist Hospital, Inc., 368 So.2d 1219 (La.App. 4 Cir.1979); Kirkendall v. Harbor Ins. Co., 698 F.Supp. 768 (W.D.Ark.1988); Smythe v. Am. Red Cross Blood Services, 797 F.Supp. 147 (N.D.N.Y.1992); Giorno v. Temple University Hospital, 875 F.Supp. 267 (E.D.Pa.1995). We also note one California State Court case in which the AABB was dismissed on Summary Judgment upon a finding that no issue of duty was presented. N.N.V. v. San Diego Blood Bank, et al, case no. 653534, Superior Court for the State of California, County of San Diego (May 1996).
Both parties are in serious dispute over the factual contentions made by the other. In support of their Motion For Summary Judgment, the AABB submitted evidence to show they are a nonprofit organization with no regulatory, licensing or police power over its members. The organization promulgates voluntary standards for blood banking organizations to help ensure a safe blood supply. The AABB does not collect, prepare, test, process, store or distribute blood or blood products. These duties are performed by the individual blood banks. At the time of Annie's transfusion, the AABB's suggestions for safeguarding blood were identical or consistent with those of the FDA and other governmental entities.
In opposition to summary judgment, plaintiffs submitted the affidavit of a pathologist, Dr. Theodore A.W. Koerner[1], who stated that AABB members collected half of the nation's blood supply and transfused about 80% of the blood to patients in 1983; the AABB established itself as the leader in setting blood standards; the AABB performed inspections of blood banks that, in some places, were substituted for the governmental authorities in the licensing processes; the AABB exhibited substantial power and control over the operation of member blood banks; that blood banks, hospitals and patients relied on the AABB for safety of the nations blood supply; that the AABB dominated the establishment of standards for the blood banking industry and exerted considerable influence over the practice and procedure of member blood banks. Dr. Donald Francis testified by deposition that when he was employed by the Centers for Disease Control, they would routinely look to the AABB for advice on the safety of blood and that the AABB had a responsibility to protect the public's interest relative to blood transfusions. The AABB had the power to influence the FDA. Dr. Edgar Cooper, director of the Ochsner blood bank at the relevant time, testified by deposition that the *140 AABB provided inspection and accreditation programs and set the transfusion standards within the blood banking industry.
Clearly, genuine issues of material fact abound for determination as to whether the AABB owed a duty of care to plaintiffs under the contested facts of this case. This matter is more properly reserved for determination after trial on the merits.
The remaining issues for determination concern the knowledge and intent of the AABB in the performance of its duties. The AABB submitted evidence that in January 1983 there was no concrete evidence that HIV/AIDS was transmitted by blood transfusions. Plaintiffs submitted evidence showing that the AABB had sufficient knowledge that HIV/AIDS was transmissible by blood to begin positive steps to protect the blood supply in December 1982, or, at the latest, early January 1983. Instead, plaintiffs contend the AABB blocked dissemination of information to blood banks and the public, resulting in numerous unnecessary AIDS cases. At issue here is the knowledge and motive of the AABB behind their decisions concerning actions to be taken by member blood banks to safeguard blood in January 1993. Clearly, resolution of this issue is not appropriate for summary judgment and more properly reserved for trial on the merits.
Plaintiffs also argue the trial court erred in not allowing them to amend their petition because the amendment simply clarified the factual allegations being made against defendants. The defendants argue the allegations assert a new cause of action and, as the amendment was filed too close to the trial date, the court properly denied the request.
We have reviewed the proposed amendment, which arguably clarifies the factual allegations against the defendants and does not assert a new cause of action. While it may not have been an abuse of discretion to deny the request to amend shortly before trial, as we now reverse the grant of summary judgment in favor of the AABB and remand for further proceedings, we see no reason why plaintiffs should not now be allowed to amend the petition. Accordingly, it is ordered that plaintiffs' Motion For Leave to File the First Supplemental and Amending Petition is granted.
For the above reasons, we vacate the grant of summary judgment in favor of the AABB and remand the matter for a trial on the merits; order that plaintiffs' are granted leave to file their First Supplemental and Amending Petition; and we affirm the grant of summary judgment in favor of Terry King, M.D.
SUMMARY JUDGMENT VACATED IN PART; AFFIRMED IN PART; CASE REMANDED WITH ORDER.
NOTES
[1] Plaintiffs filed a motion to supplement the record on appeal with the deposition of Dr. Koerner; however, the deposition was not considered by the trial court and thus is not properly part of the record on appeal. The motion was denied.