**Marjorie Marie VALEDON MARTINEZ, Plaintiff, Appellee,**

v.

**HOSPITAL PRESBITERIANO de la CO- MUNIDAD, INC., Defendant, Appellant.**

No. 86–1429.

United States Court of Appeals, First Circuit.

Argued Nov. 5, 1986.

Decided Dec. 17, 1986.

Igor Dominguez with whom William Estrella Law Offices, San Juan, P.R., was on brief, for defendant, appellant.

Charles A. Cordero with whom Cordero, Colon & Miranda, Old San Juan, P.R., was on brief, for plaintiff, appellee.

Before COFFIN, Circuit Judge, TIMBERS,* Senior Circuit Judge, and BOWNES, Circuit Judge.

TIMBERS, Circuit Judge:

In this diversity medical malpractice action, appellant Hospital Presbiteriano de la Comunidad, Inc. ("appellant") appeals from a judgment entered August 26, 1985 on a jury verdict in the District of Puerto Rico, Raymond L. Acosta, *District Judge,* awarding appellee Marjorie Marie Valedon-Martinez ("appellee") $600,000 damages. Appellant's appeal brings up for review an order entered March 27, 1986 denying its motions to dismiss the action or for judgment n.o.v.

Appellant claims on appeal that the district court lacked subject-matter jurisdiction, that appellee's action was time-barred, that the evidence was insufficient to support the finding of the jury that appellant was negligent, and that a jury instruction on the standard of care applicable to appellant in 1962 was erroneous.[1]

We hold that the determination of the district court that there was diversity of citizenship at the time appellee commenced the action was not clearly erroneous and accordingly the district court had subject matter jurisdiction. We also hold that ap-

---

* Of the Second Circuit, sitting by designation.

1. Appellant claims also that the district court erred in admitting testimony offered by appellee of an economics expert. We have considered this claim carefully and hold that it is without merit and does not warrant further discussion.

pellee's action was not time-barred, that there was sufficient evidence to support the jury's finding that appellant was negligent, and that the district court did not err in denying appellant's motions to dismiss the action or for judgment n.o.v. We further hold that, based on the record before us which does not contain a transcript of the jury instructions, it does not appear that the district court's instruction on the standard of care requires reversal. We affirm.

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Appellant is a private nonprofit hospital incorporated under the laws of Puerto Rico and located in San Juan.

On March 17, 1962, appellee's mother, then between 26 and 28 weeks pregnant, sustained a rupture of the amniotic sac and was admitted to appellant hospital.[2] On March 22, she developed a high fever as a result of an intra-uterine infection. Appellant's records indicate that between 8:00 a.m. and 1:00 p.m. on March 23, a nurse tested her five times with a stethoscope for a fetal heartbeat. Each time the nurse could hear no heartbeat, but no doctor ever confirmed this. At 1:45 p.m., a hospital intern, fearing that the baby was dead, administered to appellee's mother a labor-inducing drug. The intern delivered appellee at 2:00 p.m. Appellee weighed two pounds, 14 ounces. Appellant's records indicate that she was "deeply cyanotic", meaning that, due to respiratory problems, she looked bluish. In view of this condition, a pediatric resident employed by appellant ordered that appellee be placed in an incubator and that oxygen be administered to her for 48 hours. The resident's order was recorded in appellant's records as "Keep in incubator with oxygen." The records do not indicate the amount of oxygen that was to be administered or the

amount that actually was administered. The incubator used had no device to control or measure the amount of oxygen administered. An incubator with such a device had been on the market in the United States since the early fifties, but appellant did not own one.

Appellant's records contain notations by nurses that at 2:30 p.m. the cyanosis was subsiding and that at 5:00 p.m. appellee had good color and her eyes were normal. At 12:30 p.m. on the following day, March 24, a pediatrician examined appellee. He ordered that the use of oxygen was to be continued, but for the first time noted on appellant's records the exact amount of oxygen to be administered.

When appellee was one year old, she was diagnosed to be suffering from retrolental fibroplasia ("RLF") in both eyes, rendering her legally blind without glasses. With glasses, appellee has from 20/30 to 20/40 vision in one eye but is still legally blind in the other eye. Appellee also has several other eye problems, all resulting from the RLF.

RLF is a disease of the retina characterized by the presence of an opaque fibrous membrane behind the lens of the eye. RLF is most common among premature babies with low birthweight. Since the early 1950s, excessive use of oxygen has been recognized as a major cause of RLF. A 1955 American Medical Association ("AMA") publication warned the medical profession that oxygen administered to premature babies should be controlled carefully to avoid damage to the eyes.

Appellee commenced the instant action on March 21, 1984. She alleged that appellant had breached its duty of care to her by failing to control the level of oxygen in the incubator in which she was placed following her birth on March 23, 1962. She alleged that this negligence had caused her RLF.

---

**2.** Unless otherwise indicated, all events referred to in this and the following paragraph of this opinion occured in March 1962.

In its answer filed August 17, 1984, appellant denied that it was negligent and asserted the statute of limitations as an affirmative defense.

On May 3, 1985, appellant filed a motion to dismiss the complaint for lack of subject matter jurisdiction and on the ground that the action was untimely. On May 8, a magistrate entered an order recommending that the district court hold a hearing on the jurisdictional issue.

On August 20, 1985, the district court entered an order denying appellant's motion to dismiss, but without holding a hearing on the issue of jurisdiction.

During the period August 21–26, 1985, the case was tried to a jury. On August 23, at the close of appellee's case, appellant moved unsuccessfully for a directed verdict on the ground that there was insufficient evidence to support a verdict for appellee. On August 26, the jury returned a special verdict finding appellant negligent and awarding appellee $600,000 in damages. Judgment was entered on the jury's verdict on August 30. On September 6, appellant filed motions to dismiss the action or for judgment n.o.v., and for a variety of other forms of post-trial relief not relevant to this appeal. The district court entered an order denying the motions on March 27, 1986.

Appellant appeals from the judgment entered August 30, 1985, which brings up for review the order entered March 27, 1986. For the reasons stated below, we affirm.

II.

Appellant claims that the district court erred in failing to dismiss the action for lack of subject matter jurisdiction.

Appellee alleged in her complaint that the jurisdictional underpinning for the action was diversity of citizenship. 28 U.S.C. § 1332(a)(1), (c) and (d) (1982). She alleged that appellant was a citizen of Puerto Rico, that she was a citizen of Florida, and that the matter in controversy exceeded $10,-000.

On May 3, 1985, appellant filed a motion to dismiss the action for lack of subject matter jurisdiction. Appellant claimed that appellee was a citizen of Puerto Rico at the time she commenced the action and therefore there was no diversity. In opposition to appellant's motion, appellee filed, in addition to her own affidavit, those of her mother and her sister. From these affidavits and appellee's deposition, it appeared that appellee had been emotionally dependent on her older sister since their parents' divorce in 1975. Appellee's sister had moved to Miami, Florida, in 1982. Appellee moved permanently to Miami to join her sister in December 1982. Appellee brought with her all of her clothes and personal belongings, obtained a job in Miami, opened a bank account, and began studying English. In July 1983, appellee developed a kidney problem. She returned to Puerto Rico to obtain free medical treatment from her father who is a physician. While in Puerto Rico, she enrolled in college. In December 1983, appellee returned to Florida and unsuccessfully applied for admission to several universities in Miami. After commencing the instant action on March 21, 1984, appellee worked in Miami until July 1984, when she returned to Puerto Rico to finish school. She planned to return to Miami on completion of her schooling in the summer of 1985. Throughout this period, appellee kept her personal belongings in Miami, maintained a bank account there and not in Puerto Rico, worked only in Miami, and intended to make Florida her home.

As stated above, the district court entered an order on August 20, 1985 denying appellant's motion to dismiss for lack of subject matter jurisdiction. The court held that appellee was a citizen of Florida at the time she commenced the action and, appellant being a citizen of Puerto Rico, the court had jurisdiction based on diversity of citizenship. On September 6, 1985, appellant filed various post-trial motions, including one to dismiss for lack of jurisdiction. The court denied this motion by an order entered March 27, 1986.

There is diversity of citizenship if the plaintiff and the defendant are "citizens" of different states. 28 U.S.C. § 1332(a)(1). For the purposes of § 1332(a)(1), state citizenship is the equivalent of "domicile." *Hawes v. Club Ecuestre el Comandante,* 598 F.2d 698, 701 (1st Cir.1979). "Domicile" is "the technically preeminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined." *Williamson v. Osenton,* 232 U.S. 619, 625 (1914) (Holmes, J.). To effect a change in domicile, two things are required: "'First, residence in a new domicil; and second, the intention to remain there.'" *Hawes, supra,* 598 F.2d at 701 (quoting *Sun Printing and Publishing Association v. Edwards,* 194 U.S. 377, 383 (1904)). It is well settled that "[d]omicile at the time suit is filed is the test and jurisdiction once established is not lost by a subsequent change in citizenship." *Hawes, supra,* 598 F.2d at 701. *Accord, Smith v. Sperling,* 354 U.S. 91, 93 n. 1 (1957).

In denying appellant's first motion to dismiss for lack of jurisdiction, the district court recognized and correctly applied these principles. The court's determination that appellee was a citizen of Florida at the time she commenced the action is a mixed question of law and fact and as such may not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a); *Hawes, supra,* 598 F.2d at 702; *Lyons v. Salve Regina College,* 565 F.2d 200, 203 (1st Cir.1977) (although evidence on diversity of citizenship "was both sharply conflicting and rather slim ..., the findings of fact by the District Court cannot be said to be plainly wrong on this record and will, therefore, not be disturbed by this Court."), *cert. denied,* 435 U.S. 971 (1978). " '[A] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City,* 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson,* 470 U.S. at 573–74. The district court's finding in the instant case that appellee was a citizen of Florida at the time she commenced the action was not clearly erroneous.

Appellant claims also that the court erred in failing to hold an evidentiary hearing on the motion to dismiss for lack of jurisdiction. A district court has very broad discretion in determining the manner in which it will consider the issue of jurisdiction. *Tanzymore v. Bethlehem Steel Corp.,* 457 F.2d 1320, 1321–24 (3d Cir.1972); 13B Wright, Miller & Cooper, Federal Practice and Procedure § 3612, at 542–43 (2d ed. 1984). All that is required is that the court "afford the nonmoving party 'an ample opportunity to secure and present evidence relevant to the existence of jurisdiction.'" *Prakash v. American University,* 727 F.2d 1174, 1180 (D.C. Cir.1984) (footnote omitted) (quoting *Gordon v. National Youth Work Alliance,* 675 F.2d 356, 363 (D.C. Cir.1982)). Here, the district court granted appellant an extension of time to pursue evidence relevant to the jurisdictional issue. Appellant neither filed opposing affidavits nor formally requested a hearing. Under such circumstances, the district court did not abuse its discretion in deciding the issue on documentary evidence.

We hold that the determination of the district court that there was diversity of citizenship at the time appellee commenced the action was not clearly erroneous and accordingly that the district court had subject matter jurisdiction.

## III.

Appellant claims that appellee's action was time-barred by Puerto Rico's one-

year statute of limitations for tort actions.[3] Appellant acknowledges that the one-year period was tolled until appellee reached the age of majority, P.R. Laws Ann. tit. 32, § 254 (1968); that the age of majority under Puerto Rico law is 21, P.R. Laws Ann. tit. 31, § 971 (1968); and that appellee commenced her action within one year after she reached 21.

Appellant argues, however, that the action was untimely since appellee failed to commence it within one year after she established a domicile in Florida. Appellant's argument is based on Fed.R.Civ.P. 17(b), which provides in relevant part:

> **"(b) Capacity to Sue or be Sued.** The capacity of an individual ... to sue or be sued shall be determined by the law of his domicile."

Under Florida law, a person has the capacity to sue at age 18. Fla. Stat. Ann. § 743.07(1) (West 1986). Appellant contends therefore that under Rule 17(b) appellee's age disability ceased when she established a Florida domicile in December 1982. Since under Puerto Rico law referred to above the statute of limitations was tolled until appellee reached her majority, so appellant's argument goes, appellee had one year after December 1982 within which to commence her action. If appellant were correct, appellee's action, commenced March 21, 1984, would be untimely.

Appellant's ingenious theory fails because Rule 17(b) has nothing to do with statutes of limitations or their tolling provisions. It therefore does not displace the admittedly applicable law of Puerto Rico that the limitations period is tolled until a plaintiff reaches age 21.

Appellant does not challenge the applicability of Puerto Rico choice of law rules to this action. *Day & Zimmerman, Inc. v. Challoner,* 423 U.S. 3 (1975) (per curiam) (federal court sitting in diversity must apply the choice of law rules of forum state). Nor does appellant dispute that, had appel-

lee commenced this action in a Puerto Rico court, that court would have applied Puerto Rico law. *Jiminez Puig v. Avis Rent-A-Car System,* 574 F.2d 37, 40 (1st Cir.1978) ("Puerto Rico applies the law of the place of the tort, the *lex loci delicti.*"); *Jiminez v. American Airlines, Inc.,* 579 F.Supp. 631, 632 & n. 1 (D.P.R. 1983) ("Puerto Rico espouses the dominant contacts rule in determining its choice of law rule in tort actions"). When applying Puerto Rico law to substantive matters, the Puerto Rico courts also apply Puerto Rico's statute of limitations. *Santiago v. Becton Dickinson & Co.,* 539 F.Supp. 1149, 1151 (D.P.R. 1982) ("The Supreme Court of Puerto Rico has often held that the matter of extinctive prescription is a substantive, not procedural question...."); *De Vane v. United States,* 259 F.Supp. 18, 20 (D.P.R. 1966) ("[T]he law of the forum ... to be applied is the substantive and procedural law of Puerto Rico, the fact that plaintiff is a domiciliary of the State of Florida notwithstanding."). When applying Puerto Rico statutes of limitations, Puerto Rico courts also apply the concomitant tolling provisions of those statutes. *See Santiago, supra,* 539 F.Supp. at 1151–52; *cf. Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 464 (1975) ("In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application.").

The district court accordingly was bound to apply the Puerto Rico statute of limitations and tolling provisions to the instant action. *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530 (1949); *Steorts v. American Airlines, Inc.,* 647 F.2d 194, 195–96 (1st Cir.1981). This appellant does not dispute. Appellant nevertheless argues that, by virtue of Rule 17(b), Florida's age of majority should be superimposed on admittedly applicable Puerto Rico law. This argument is predicated on the implication that Puerto Rico's provision

---

**3.** P.R. Laws Ann. tit. 31, § 5298(2) (1968). The Supreme Court of Puerto Rico recently has held unconstitutional P.R. Laws Ann. tit. 26, § 4109 (Supp. 1985), which sets forth time limitations for medical malpractice claims. *Lugo v. Cordova Iturregui,* 86 J.T.S. 73 (1986). Under either § 5298(2) or § 4109, appellee had one year after reaching age 21 within which to file her action.

tolling the limitations period until a plaintiff reaches 21 conflicts with, and therefore must yield to, Rule 17(b). *Cf. Hanna v. Plumer,* 380 U.S. 460 (1965). In *Hanna* the Supreme Court held that, except in unusual circumstances, the Federal Rules of Civil Procedure govern the procedure in federal diversity cases even "where the applicable Federal rule is in direct collision with the law of the relevant State." *Id.* at 472. But there is no "collision" whatever between Rule 17(b) and Puerto Rico law. Neither the language nor the history of Rule 17(b) suggests that it has anything to do with statutes of limitations or their tolling provisions. The Rule merely sets forth the basis for determining the capacity of a party to sue or be sued in his or her own name in the federal district courts. 3 Moore's Federal Practice ¶ 17.16, at 1379–80 (2d ed. 1985); *see Donnelly v. Parker,* 486 F.2d 402, 406–07 (D.C. Cir.1973) ("[S]tate law may confer but not deny capacity to sue or defend federally, and the only effect of a party's competence upon maintenance of the action is the possible need for appointment of a guardian ad litem or entry of a protective order.") (footnotes omitted). At most, Rule 17(b) would have permitted appellee to commence the action in her own name before reaching age 21. The Rule neither addresses nor displaces Puerto Rico's policy determination to toll the limitations period until a plaintiff reaches 21.

Since Rule 17(b) and the law of Puerto Rico do not conflict, the *Hanna* analysis does not apply to displace any aspect of the Puerto Rico statute of limitations and tolling provisions. *Walker v. Armco Steel Corp.,* 446 U.S. 740, 752 (1980). Those provisions therefore apply in their entirety to this action.

We hold that, since appellee commenced the action within one year after she reached age 21, her action was not time-barred.

## IV.

Appellant claims that there was insufficient evidence to support the finding of the jury that appellant was negligent and the district court therefore erred in denying appellant's motion for judgment n.o.v.

As appellant must realize, it assumes a heavy burden to persuade us that the jury's verdict should have been set aside based on insufficiency of the evidence:

" 'The principles governing the consideration of motions for directed verdict and judgments n.o.v. are well settled in this circuit. The evidence must be viewed in the light most favorable to plaintiff, giving him the benefit of every favorable inference that may be fairly drawn. If fair minded men may draw different inferences and reasonably disagree as to what the verdict should be, the matter is for the jury.' "

*Borras v. Sea-Land Service, Inc.,* 586 F.2d 881, 885 (1st Cir.1978) (quoting *Dumas v. MacLean,* 404 F.2d 1062, 1064 (1st Cir. 1968)). *See also Fact Concerts, Inc. v. City of Newport,* 626 F.2d 1060, 1064 (1st Cir.1980) (denial of motion for judgment n.o.v. will be reversed only where "there is a total failure of evidence to prove the plaintiff's case."), *vacated on other grounds,* 453 U.S. 247, 271 (1981).

■ Appellant here has failed to sustain the heavy burden established by our cases. Indeed, we are satisfied that appellee adduced an abundance of evidence from which the jury was entitled to find, or to draw an inference of, negligence. For example, appellant's records do not show the amount of oxygen that was ordered to be administered or that actually was administered to appellee during the first 22 hours after her birth. Nor do appellant's records show that the attending intern ordered the nurses to monitor closely the amount of oxygen administered. Appellee adduced testimony that this constituted poor record keeping and was not in compliance with AMA standards then in effect. Poor record keeping can give rise to an inference of negligence. *Perez Cruz v. Hospital La Concepcion,* 115 P.R. Dec. 721 (1984). Moreover, appellee's father testified that he observed a paper cup over appellee's mouth with a tube directing oxygen direct-

ly into the cup. The cup was attached by a rubberband around the baby's head. An expert witness testified that he never would have administered oxygen in such a manner. This permitted the jury to find that the paper cup device was not the most technologically advanced method of administering oxygen available to appellant, even in 1962. There also was evidence that the danger that excessive oxygen could cause RLF was known throughout the medical community since the early 1950s. Moreover, an ophthalmologist testified that he had no doubt that appellee's RLF was caused by excessive oxygen administered shortly after her birth.

■ This and other evidence satisfies us that fair minded jurors could have found that appellant was negligent and that there was not a total failure to prove appellee's case.

We hold that there was sufficient evidence to support the jury's finding that appellant was negligent and the district court therefore did not err in denying appellant's motion for judgment n.o.v.

## V.

Appellant claims that the district court's jury instruction on the standard of care was erroneous. Appellant asserts in its brief that the court, over appellant's objection at the charging conference, instructed the jury "regarding the best practice of medicine" rather than "as to the community practice standard".

■ Unfortunately, appellant has precluded meaningful review of this claim by failing to have transcribed the jury instructions given at trial. The trial transcript in the record on appeal before us concludes with a parenthetical indication that "Whereupon jury instructions were given and the jury retired to deliberate". Under Fed.R.App.P. 10(b)(1), it was appellant's duty to "order from the court reporter a transcript of such parts of the proceedings not already on file as [it deemed] necessary...." *See Sanabria v. International Longshoremen's Association*, 597 F.2d

312, 313 (1st Cir.1979) ("'[T]he transcript ordered by appellants on appeal and furnished to us does not contain the jury instructions. This is the responsibility of appellants."). We have held repeatedly that we will not review a claim of error if the appellant has failed to include a transcript of the pertinent proceedings in the record on appeal. *E.g., Muniz Ramirez v. Puerto Rico Fire Services*, 757 F.2d 1357, 1358 (1st Cir.1985); *Grimard v. Carlston*, 567 F.2d 1171, 1172 (1st Cir.1978); *United States v. One Motor Yacht Named Mercury*, 527 F.2d 1112, 1113–14 (1st Cir.1975); *see also National Alfalfa Dehydrating & Milling Co. v. Sorenson*, 220 F.2d 858, 862 (8th Cir.1955) (In the absence of jury instructions in the transcript, "'[W]e must presume that the court correctly instructed the jury as to every controverted issue".).

Our inability effectively to review appellant's claim regarding the jury instruction should not be construed as a Draconian measure designed to punish either appellant or its counsel. Rather, in the absence of a transcript we simply are unable to evaluate the adequacy of the district court's instruction or to determine whether appellant interposed a proper objection.

■ Despite the absence of the relevant portion of the transcript, we nevertheless have considered appellant's claim to the extent possible from the record before us. That record indicates that the district court did not err. First, we have examined appellee's proposed jury instruction on the standard of care and we conclude that it comports in every respect with the rules set forth in *Oliveros v. Abreu*, 101 P.R. Dec. 209, 226–27 (1973). Although appellant argues that retroactive application of *Oliveros* is inappropriate, appellant has failed to overcome the strong presumption in favor of retroactive application which we enunciated in *Miro Martinez v. Compania Transatlantica Espanola*, 643 F.2d 897, 898–99 (1st Cir.1981). Second, appellant has failed to articulate any difference relevant to this case between the community practice standard and the best practice of medicine standard. Appellant's own Chief

of Pediatrics conceded at trial that in 1962 appellant was accredited by the AMA and to maintain that status it was required to comply with AMA standards. Moreover, the same witness and one of appellant's staff physicians both conceded that in 1962 the AMA insisted upon adherence to record-keeping standards. These concessions suggest that the community standard of medical practice in Puerto Rico in 1962 rose to the level of the best practice standard. Whichever standard the court charged, it appears that there was no reversible error.

We hold that, to the extent that the record on appeal permits review of appellant's claim, the district court's jury instruction does not require reversal.

## VI.

To summarize:

After considering affidavits submitted by appellee, the district court determined that appellee was a citizen of Florida at the time she commenced her action. Since that determination was not clearly erroneous and appellant was a citizen of Puerto Rico, we hold that the district court had subject matter jurisdiction based on diversity of citizenship. Since the district court afforded appellant ample opportunity to present opposing evidence, the court acted within its discretion in deciding the issue of jurisdiction without a hearing.

We also hold that appellee's action was not barred by the Puerto Rico statute of limitations since she commenced the action within one year after she reached age 21.

The provisions of Rule 17(b) regarding capacity to sue have nothing to do with statutes of limitations or their tolling provisions. That Rule does not displace any provision of Puerto Rico law applicable to this case.

Moreover, we hold that there was sufficient evidence to support the jury's finding that appellant was negligent and that the district court did not err in denying appellant's motion for judgment n.o.v.

Finally, to the extent that the record on appeal permits review of appellant's claim regarding an assertedly erroneous jury instruction, the court's instruction does not require reversal.

Affirmed.