# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-517 c/w 09-518

# ELLIOTT A. MISTICH, JR., ET AL.

# VERSUS

# DIEDRA R. WEEKS, ET AL.

# CONSOLIDATED WITH

# JUDITH LANGLINAIS MISTICH

# VERSUS

# LOUISIANA FARM BUREAU

# AND STATE FARM INSURANCE

**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2005-2134;2005-2147
HONORABLE MARILYN C. CASTLE, PRESIDING
**\*\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
### JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses G. Thibodeaux, Chief Judge, Sylvia R. Cooks, and John D. Saunders, Judges.

**REVERSED AND REMANDED.**

George Pivach, II
Mark A. Pivach
Gregory P. Nolan
Ellen Pivach Dunbar
8311 Highway 23, Suite 104
P.O. Box 7125
Belle Chasse, LA 70037
(504) 394-1870
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Elliott Mistich, Jr., Jamie Mistich Bergeron, Estate of Elliott Mistich, Sr.

Charles R. Sonnier

**2 South Magdalen Square**
**P.O. Box 700**
**Abbeville, LA 70510**
**(337) 893-5973**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
 **Judith L. Mistich, Marie M. Langlinais, Stephen and Monique Broussard**


**Edward O. Taulbee, IV**
**Max Michael Menard**
**Taulbee & Associates, L.L.C.**
**100 Asma Boulevard, Suite 200**
**P.O. Box 2038**
**Lafayette, LA 70502-2038**
**(337) 269-5005**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
 **Farm Bureau Casualty Ins. Co. and Farm Bureau Mutual Ins. Co.**

**COOKS, Judge.**

Plaintiffs appeal the judgment of the trial court granting the Defendants' Motion for Summary Judgment on the limited issue of coverage. For the reasons that follow, we find summary judgment was inappropriate, and we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On May 2, 2004, Elliott Mistich, Sr. was driving a 2002 BMW 530 west on Louisiana Highway 92 in Youngsville. His mother-in-law, Marie Langlinais, was seated in the front passenger seat. Directly behind Ms. Langlinais was Judith Mistich, Elliott's wife. Judith Mistich's two grandchildren, Timothy and Haley Broussard, were also in the rear passenger seats.

At that time, Diedra Weeks, was driving her 1999 Honda Accord east on Hwy. 92, which at that location was a two-lane roadway with one lane running east and one lane running west. Ms. Weeks' vehicle crossed the center line, entered the westbound lane, and collided head-on with the BMW driven by Mistich.

As a result of the accident, Elliott Mistich suffered fatal injuries. The other passengers also suffered varying degrees of injury. The following lawsuits were instituted after the accident:

1.  Judith Mistich filed suit for her own injuries and the wrongful death of her husband.

2.  Marie Langlinais filed suit for her personal injuries.

3.  Steven and Monique Broussard, the parents of the two minor children, Haley and Timothy, filed suit on behalf of their children for their injuries.

4.  Elliott Mistich, Jr. and Jamie Bergeron Mistich filed suit for the wrongful death of their father.

Named as defendants in the lawsuits were Diedra Weeks and her insurer, US Agencies Casualty Insurance Company; Louisiana Farm Bureau Casualty Insurance Company and Louisiana Farm Bureau Mutual Insurance Company, who issued two

-1-

policies of insurance to the Mistichs; Gemini Insurance Company, who issued a policy of insurance on the BMW 530 to the owner of the vehicle, Tobias, Inc.; and State Farm Mutual Automobile Insurance Company, who issued a policy of insurance covering a 1963 Cadillac antique vehicle owned by Elliott Mistich. The petition was later amended to add several agents who represented Farm Bureau in the procurement of the two Farm Bureau policies. The amended petition added the following paragraph:

> In the event that said policy of insurance is determined not to provide coverage, Plaintiffs make the following additional allegations: At all times material and relevant hereto, Eric Robichaux, Christine Laporte, Fran Fullerton, and R.J. Stoutes acted as agent(s) for Louisiana Farm Bureau, and as agent(s) failed to: (1) properly advise and direct the insureds, (2) properly follow the instructions/requests given by the insureds, (3) obtain the appropriate insurances for or on behalf of the insureds, Judith and/or Elliot Mistich, as intended.

The record revealed the following facts concerning the ownership of the BMW 530 and insurance coverage for the parties in question. The BMW 530 was owned by Tobias, Inc., a business that was owned by Judith Mistich. Tobias, Inc. obtained and made the payments on a policy of insurance for that vehicle from Gemini Insurance Company. Tobias rejected UM coverage on the Gemini policy. Judith Mistich testified the BMW was provided to her by Tobias as a "company car" for her use at any time and without any restrictions. Judith owned no other vehicles at this time.

Farm Bureau issued a comprehensive automobile liability policy, No. C707387, to Elliott and Judith Mistich. This policy did provide for UM coverage with limits of 300,000.00/500,000.00. The Mistichs also purchased from Farm Bureau a Commercial Umbrella Policy, No. UM806930, which provided additional coverage to them in the amount of $1,000,000.00.

At the time the two Farm Bureau polices were issued, the Mistichs had three

vehicles available to them for use: The 2002 BMW 530, owned by Tobias, Inc.; a Ford 250 truck, owned by Elliott Mistich's company, Jade Marine, and an antique 1963 Cadillac owned by Elliott Mistich. The 1963 Cadillac was covered by a policy of insurance issued by State Farm.

After discovery, Farm Bureau filed a Motion for Summary Judgment alleging neither policy issued by it provided coverage under the facts of this case. Specifically, Farm Bureau asserted there was no coverage under its comprehensive policy because the BMW was provided for the "regular use" of Judith Mistich by her employer, Tobias, Inc. In support of this argument, Farm Bureau referenced what it termed a "clear and unambiguous exclusion" contained in the policy pertaining to UM coverage, which read:

> EXCLUSIONS
> THIS POLICY DOES NOT APPLY:
> . . . .
> (b) Under any of the coverages for automobiles owned or furnished for regular use of any member of the insured's household, unless shown on the declaration;

Because the BMW was not specifically listed on the policy as an insured vehicle, Farm Bureau contended it was not a covered vehicle under the policy. Farm Bureau argued the purpose of this type of exclusionary clause is to exclude from coverage non-owned automobiles over which the insured has general authority of use. Secondly, Farm Bureau asserted there could be no coverage under its umbrella liability policy since coverage under the umbrella policy presupposed coverage under the primary policy.

Plaintiffs opposed summary judgment, arguing the Farm Bureau comprehensive policy was vague and ambiguous. Specifically they argued the phrase in the exclusionary clause "unless shown on the declaration" could just as likely refer to "members of the insured's household' as to "automobiles." Therefore, Plaintiffs

contended the policy was ambiguous. Plaintiffs also argued Farm Bureau's contention that an automobile *must* be specifically listed on the declarations page was "non-sensical and ambiguous" given the fact there was no space on the declarations page to list *any* automobiles. Plaintiffs further noted the declarations page on the comprehensive policy specifically referenced "UM hired/non-owned," which indicated that the policy covered all hired and non-owned vehicles. Additionally, Plaintiffs maintain Farm Bureau and its agents were guilty of negligent representation when the policies were procured.

At the hearing on the motion for summary judgment, the trial court found Farm Bureau's policy was clear, unambiguous, and had the standard "regular use" exclusion. The court determined there was no coverage under either Farm Bureau policy. In addressing Plaintiffs' arguments as to what these polices actually covered, since there was no listed vehicle on the declarations page, the trial court stated people with company cars such as Judith Mistich often buy a comprehensive policy that does not have a listed vehicle to protect them if they are driving another party's vehicle. The trial court concluded the Mistichs purchased the Farm Bureau policy to fill a hole in the Mistichs' coverage if they were driving a rented or borrowed vehicle.

During the hearing on the motion for summary judgment, when it became clear the trial court was prepared to rule in Farm Bureau's favor, counsel for Plaintiffs noted they had yet to take depositions concerning representations that might have been made to the Mistichs concerning what the comprehensive policy issued by Farm Bureau actually was intended to cover. The trial court noted that after discovery it could be possible "there are facts in there to establish that the agents and/or Farm Bureau should have had information to cause a different policy to be written." When pressed by Plaintiffs to pretermit a decision until final discovery, the trial court stated

-4-

as follows:

> THE COURT: Well, I don't think anybody – Regardless of what happens, I don't think anybody's in a position to go to the Court of Appeals, because its not a final disposition of the claims against Farm Bureau. So I don't think anybody would be in a position to do anything anyway.

> MR. SONNIER: Well –

> THE COURT: It's a partial - - I mean, I don't - - You don't certify that as a final appealable judgment when it's a partial judgment. So I don't think anybody would be in a position to do that anyway.
> . . .
> So, to that extent, I'm going to grant the partial summary judgment. But, again, that does not dismiss Farm Bureau

Despite clearly setting forth that its conclusion on the limited issue of whether the language in the policy provided coverage did not make for a final, appealable judgment, the trial court then issued a judgment certifying the grant of partial summary judgment as a final, appealable judgment. Reasons for judgment provided, in pertinent part, as follows:

> . . . there is no just reason for delaying the certification and appeal of this Court's October 29, 2007 ruling against Farm Bureau's Motion for Summary Judgment as Plaintiff's remaining claims against Farm Bureau and the other defendants involve different theories of liability, causes of action, and operative facts that will not affect this Court's October 29, 2007 ruling. Plaintiffs' claims against the other insurers involve determination of coverage under entirely different insurance policies and language from the policies at issue in Farm Bureau's Motion for Summary Judgment. Further, allowing the appeal of this Court's October 29, 2007 judgment to proceed at this juncture promotes judicial efficiency and economy.

Judgment was entered on December 29, 2008 certifying as final the bench ruling that granted the Motion for Summary Judgment filed by Farm Bureau. Plaintiffs now appeal, contending the trial court's grant of summary judgment in favor of Farm Bureau was error.

## ANALYSIS

### Standard of Review

When an appellate court reviews a district court judgment on a motion for summary judgment, it applies the *de novo* standard of review, "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law."

*Gray v. Am. Nat. Prop. & Cas. Co.*, 07-1670, p. 6 (La. 2/26/08), 977 So.2d 839, 844 (*quoting Supreme Serv. & Specialty Co., Inc. v. Sonny Greer*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

The burden of proof imposed upon a movant for a motion for summary judgment are set forth in the Louisiana Code of Civil Procedure:

The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2). Summary judgment may not be rendered declaring lack of coverage unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion under which coverage could be afforded. *Jessop v. City of Alexandria*, 03-1500 (La.App. 3 Cir. 03/31/04), 871 So.2d 1140 *citing Miller, v. Superior Shipyard and Fabrication, Inc.*, 01-2907, p. 4 (La.App. 1 Cir. 08/20/03), 859 So.2d 159, 162.

After a review of the record we find the negligent representation claims alleged against Farm Bureau in this case are simply too intertwined with the question of

coverage for summary judgment to have been rendered. This fact is demonstrated by the trial court's need to make factual conclusions in rendering summary judgment on the coverage issue.

We point specifically to the trial court's factual conclusion that the motivation for the purchase of the Farm Bureau policy was to fill a hole in the Mistichs' coverage so, if they were driving another vehicle, they would be covered. Farm Bureau, as well, argued below, and to this court, that the policies were purchased simply to provide coverage for the limited times when the Mistichs: (1) rented a vehicle, (2) borrowed a vehicle, or (3) drove another person's vehicle with permission.

Judith Mistich has, at all times, maintained the purpose of the Farm Bureau polices was to acquire UM coverage. Plaintiffs also contend the State Farm policy of insurance issued on the 1963 antique Cadillac provided coverage for the Mistichs when using a non-owned vehicle. Thus, the gap in coverage the trial court referenced as the motivation for the Mistichs' purchase of the Farm Bureau polices may not have even existed. Were this true, it certainly would support the Mistichs' argument that it is simply illogical to assume, if they were aware the Farm Bureau policies did not provide UM coverage, they would have purchased this otherwise useless policy. The deposition testimony in the record of Christine LaPorte, an agent for Farm Bureau, does little to resolve this disputed issue:

Q. You've been writing insurance for [Judith Mistich] for sometime.

A. Yes.

Q. And would you say that you were her primary Farm Bureau agent?

A. The last few years, yes, really.

. . . .

Q.   Christine, just for the purposes of the record, I want to be sure that your testimony is that when you met and your supervisor met at this umbrella meeting at the Mistiches' home, that she didn't inform you that she had no uninsured motorist coverage?

A.   I do not remember that.

Q.   You just don't remember it?

A.   No.

Q.   Okay.  Did you tell them, the Mistiches, at that meeting, that it was impossible for Tobias to insure them for the Tobias vehicle, anyway?

            Mr. Taulbee:    Objection to form.

Q.   Did you instruct them that Tobias' vehicle could not be insured?

A.   I don't recall that.

Q.   Okay.  You're selling insurance.  You're there to sell insurance, to provide them with coverage for liability and cover some risks.

A.   Correct.

Q.   And your testimony in neither you nor your supervisor ever breached the subject of whether or not they had uninsured motorist coverage on any of their vehicles?

            Mr. Taulbee:    Objection to form.

            Mr. Delaune:    And objection to the form of the recitation of testimony.  You can answer.

Q.   You can answer the question.

A.   No, I do not remember asking or them asking me for that.

Q.   You know Judy to be a business woman and to conduct a pretty big, powerful business.

A.   Yes, definitely.

Q.   You know her to have a lot of insurance.

A.   Yes.

Q.   You know her to be very astute in terms of trying to be covered for all risks that she was involved in because she had purchased a bunch of policies from you?

A. Right.

Q. You find it strange that she had no uninsured motorist coverage?

A. I would think it would be under her Tobias policy with her commercial agent.

Q. But y'all never inquired about that?

A. No.

Despite the apparent confusion surrounding this question, and the Plaintiffs' communicated desire to take further discovery on the negligent representation issue, the trial court made a conclusive determination as to the Mistichs intent in purchasing the Farm Bureau policy.[1] Such a factual conclusion drawn by the trial court, which was a key component to its decision, is clearly inappropriate for summary judgment. The jurisprudence has consistently held "[e]ven though summary judgment is now favored, it is not a substitute for trial on the merits, and it has been found inappropriate for judicial determination of subjective facts, such as *motive, intent*, good faith, knowledge or malice that call for credibility evaluations and the weighing of the testimony." (Emphasis ours.) *S.J. v. Lafayette Parish School Bd.*, 06-2862, p. 5 (La. 6/29/07), 959 So.2d 884, 887 (per curiam ); *see also Greer v. Dresser Indus., Inc.*, 98-0129 (La.App. 3 Cir.7/1/98), 715 So.2d 1235, *writ denie*d, 98-2094 (La.11/6/98), 728 So.2d 867; *Quinn v. RISO Investments, Inc.*, 03-903 (La.App. 4 Cir.

---

[1] The trial court's factual conclusion on the issue of the Mistichs' intent, along with being inappropriate at the summary judgment stage, is arguably a premature decision on the negligent representation issue. If the trial court has already determined the Mistichs' intent, without allowing them to complete full discovery on the issue, it would be difficult, if not impossible, for the Plaintiffs to prevail on the negligent representation claims. The negligent representation argument presupposes that the Mistichs desired to procure UM coverage from Farm Bureau in the purchasing of the comprehensive policy. If the trial court has already found the Mistichs' intent was to merely insure themselves for the rare occasions that they rented or borrowed a vehicle, then they will not be able to prove negligent representation on the part of Farm Bureau's agents. To make such a determination on intent at the summary judgment stage is not only inappropriate, but patently unfair.

3/3/04), 869 So.2d 922; *Oaks v. Dupuy*, 32,070 (La.App.2 Cir. 8/18/99), 740 So.2d 263; *Douglass v. Alton Ochsner Med. Found.*, 97-25 (La.App 5 Cir. 5/28/97), 696 So.2d 136; *Bilbo for Basnaw v. Shelter Ins. Co.*, 96-1476 (La.App. 1 Cir. 7/30/97), 698 So.2d 691, *writ denied*, 97-2198 (La.11/21/97), 703 So.2d 1312. Therefore, we are compelled to reverse the trial court's grant of summary judgment and remand the case for a trial on the merits.

We note, in passing, that Plaintiffs' arguments concerning the ambiguity of the exclusion in the policy are compelling. The exclusionary clause in the policy provided as follows:

> EXCLUSIONS
> THIS POLICY DOES NOT APPLY:
> . . . .
> (b) Under any of the coverages for automobiles owned or furnished for regular use of any member of the insured's household, unless shown on the declaration;

Plaintiffs argue it is ambiguous whether the phrase "unless shown on the declaration" refers to (1) "members of the insureds household" or (2) "automobile." If Farm Bureau's interpretation is accepted, that the phrase is unambiguous and refers to "automobiles," the failure by Farm Bureau's agents to list any automobiles on the declarations page means there would be no coverage whatsoever. Plaintiffs argue it is equally plausible the phrase "unless shown on the declaration" refers to "any member of the insureds household." Plaintiffs point out an insured may not intend to cover all individuals (oftentimes minors) unless specifically listed on the declarations page. As we stated earlier, because the coverage question and negligent representation question are so intertwined, we find resolution of Plaintiffs' arguments on the ambiguity of the exclusionary clause in the Farm Bureau policy is not ripe for summary determination.

-10-

**DECREE**

Finding the trial court made inappropriate factual conclusions in reaching the issue of coverage, we reverse the trial court's grant of summary judgment and remand the case for further proceedings consistent with this opinion. Costs of this appeal are assessed against appellees, Louisiana Farm Bureau Casualty Insurance Company and Louisiana Farm Bureau Mutual Insurance Company.

**REVERSED AND REMANDED.**